**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIVE AMERICAN ARTS, INC., ) | |
| ) | **FILED: JULY 25, 2008** |
| Plaintiff, ) | **08CV4239** |
| ) | **JUDGE NORDBERG** |
| v. ) | **MAGISTRATE JUDGE KEYS** |
| ) | **AEE** |
| ARDEN TECHNOLOGIES, INC., D/B/A ) | |
| MUSEUM STORE COMPANY.COM, AND ) | Jury Trial Demanded |
| THEARTIFACT.COM, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

**COUNT I**

**(Indian Arts and Crafts Act)**

NOW COMES Plaintiff, Native American Arts, Inc., by its attorneys, Michael Patrick
Mullen and Scott M. Kolosso of the law firm of Mullen & Foster, and for its Complaint against
Defendant Arden Technologies, Inc. d/b/a Musuem Store Company.com and TheArtifact.com
(hereafter "Arden"), states as follows:

1.      This is a suit brought under 25 U.S.C. §305, et seq., and §305e, The Indian Arts
and Crafts Act of 1990, and The Indian Arts and Crafts Enforcement Act of 2000 (collectively
the "IACA") and jurisdiction is based upon that Federal statute under 28 U.S.C. § 1331 and
pendent jurisdiction.

2.      Venue lies in the Northern District of Illinois, where Defendant conducts business
and engages in advertising, marketing, promotion, display and sales of the products alleged
herein in the Northern District of Illinois, sold goods into and shipped goods into the Northern
District of Illinois, and where most of the events alleged occurred, including but not limited to

where the products were purchased from, where marketing and advertising materials were viewed and where the injury occurred.

3.     Native American Arts, Inc. ("Native American Arts") is a wholly Indian owned arts and crafts organization involved in the manufacture, distribution and sale of authentic Indian arts and crafts with its headquarters in the Northern District of Illinois and is composed of members of the Ho-Chunk Nation, an Indian tribe recognized by the U.S. Government.  Native American Arts meets the definition of an Indian arts and crafts organization as defined in Title 25 U.S.C. §305e and §305 et. seq.  Native American Arts has standing to bring this action under the Indian Arts and Crafts Enforcement Act of 2000.

4.     Defendant Arden is a Colorado corporation principally located in Denver, Colorado.  Arden is a retailer, wholesaler and/or supplier engaged in offering, displaying for sale and selling arts, crafts, and artworks, including but not limited to products in a traditional Indian style, motif and design, throughout the United States and in the Northern District of Illinois and worldwide.

5.     Title 25 U.S.C. §305 et. seq. prohibits a person from directly or indirectly offering or displaying for sale or selling goods in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization resident within the United States and provides for an action against such a person by an Indian arts and crafts organization.

6.     An Indian product for purposes of 25 U.S.C. §305e, et. seq. is defined in regulations promulgated by the Secretary of the Interior as including artworks that are in a traditional Indian style or medium.

7.    Defendant is not an Indian, member of an Indian tribe, recognized Indian artisan or Indian arts and crafts organizations as those terms are defined in 25 U.S.C. §305e and §305, et. seq.

8.    At all times relevant hereto, including the dates of purchases alleged herein and for a period of time prior thereto, and possibly since July 31, 2004, Defendant has directly or indirectly offered or displayed for sale or sold multiple quantities of various goods in a manner that falsely suggests they are Indian produced, an Indian product, or the product of a particular Indian or particular Indian tribe or Indian arts and crafts organization resident within the United States, including Indian products consisting of artworks, crafts, and jewelry in a traditional Indian style or medium, in violation of the IACA, Title 25 U.S.C. §305, et seq., §305e, and the regulations promulgated thereunder.

9.    For substantial periods of time, and possibly since July 31, 2004, and continuously thereafter to the present date, Defendant advertised, marketed, offered and displayed for sale and sold goods on the Internet through its websites, www.musuemstorecompany.com and www.theartifact.com in a manner which falsely suggested they are Indian-made, an Indian product, a product of an Indian tribe or the product of an Indian arts and crafts organization resident within the United States, including products consisting of art, crafts, and artworks in a traditional Indian style or medium.

10.    On May 27, 2008, and for substantial periods of time, possibly since July 31, 2004 and thereafter to the present date, Defendant offered, advertised, marketed and displayed for sale and sold goods via its website, www.museumstorecompany.com, in a manner that falsely suggested they are an Indian product, Indian produced, or the product of an Indian arts and crafts

organization resident within the United States, including Indian products consisting of artworks, crafts and jewelry in a traditional Indian style, motif or medium, including:

(a)     Artwork, consisting of an Indian Zuni Bear Paw Pendant in a traditional Indian style, composed of an Indian style motif and design and which marketing and advertising materials label as "Zuni" and "Native American."  A picture of said product is attached hereto as Exhibit **A**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(b)     Artwork, consisting of an Indian Zuni Bear Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Zuni" and "Native American."  A picture of said product is attached hereto as Exhibit **B**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(c)     Artwork, consisting of an Indian Wolf Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **C**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(d)     Artwork, consisting of an Indian Lizard Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **D**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(e)     Artwork, consisting of an Indian Lizard Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **E**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(f)     Artwork, consisting of an Indian Kokopelli Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **F**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(g)     Artwork, consisting of an Indian Kokopelli Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **G**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(h)     Artwork, consisting of an Indian Whale Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **H**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(i)     Artwork, consisting of an Indian Eagle Feather Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **I**,

which product is now in the possession of Native American Arts and will be produced for display upon request.

(j)    Artwork, consisting of an Indian Arrowhead Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **J**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(k)    Artwork, consisting of an Indian Totem Pole Pendant in a traditional Indian style, composed of an Indian style motif and design and which advertising and marketing materials label as "Native American."  A picture of said product is attached hereto as Exhibit **K**, which product is now in the possession of Native American Arts and will be produced for display upon request.

(l)    Other traditional Indian style or design arts, crafts and artworks in a traditional Indian style or medium.

11.    On May 27, 2008, and for substantial periods of time, possibly since July 31, 2004 and thereafter to the present date, Defendant offered, advertised, marketed and displayed for sale and sold goods via its websites, www.museumstorecompany.com and www.theartifact.com, in a manner that falsely suggested they are an Indian product, Indian produced, or the product of an Indian arts and crafts organization resident within the United States, including Indian products consisting of artworks, crafts and jewelry in a traditional Indian style, motif or medium in response to search terms and customer requests for products including but not limited to "Native American."

12.     The products alleged herein are traditional Indian products embodying traditional Indian styles, motifs and designs, traditionally made by Native Americans, and were falsely suggested to be Indian-made Indian products and these products were advertised, marketed, and sold as such, including advertising and marketing these products with other Indian style products suggested to be Indian products, or Indian, or Native American made.

13.     Any unqualified use of the name Native American or Indian or an Indian tribe suggests that the product is Indian made and an Indian product under the IACA.

14.     A non-Indian maker of products in an Indian style motif and design cannot utilize the terms "Indian," "Native American" or the name of a particular Indian tribe in advertising or marketing said products unless said maker qualifies the usage of such terms so that consumers are not suggested to be purchasing authentic Indian-made products.  Native American Arts, Inc. v. The Waldron Corporation, 399 F.3d 871 (7th Cir. 2005).

15.     A portion of the products advertised, marketed, offered, displayed for sale and sold by Defendant are in a traditional Indian style, composed of Indian motifs and designs.

16.     A portion of the products displayed for sale by Defendant did use the unqualified terms "Native American," "Hopi" and "Zuni".

17.     The Internet websites display promoting Defendant's products are advertisements and constitute advertising activity.  Such advertising contains the use of unqualified terms "Native American" and "Zuni".

18.     At various times relevant hereto, Defendant has been advertising, marketing, offering, displaying for sale and selling products with different advertisements and different products through different advertisements, advertising activities and mediums, in a manner that

falsely suggested they are Indian-made, an Indian product, a product of an Indian tribe or the product of an Indian arts and crafts organization resident within the United States.

19.    For substantial periods of time since July 31, 2004 and continuously thereafter to the present date, Defendant advertised, marketed, offered and displayed for sale and sold goods in a manner that falsely suggested they are Indian-made, an Indian product, a product of an Indian tribe or the product of an Indian arts and crafts organization resident within the United States, including Indian products consisting of art, crafts and artworks in a traditional Indian style or medium.

20.    The Indian-style goods advertised, displayed, offered for sale and sold by Defendant since July 31, 2004, including those advertised, sold, displayed and offered for sale alleged herein, are not and were not Indian produced, an Indian product made by an Indian or the product of an Indian arts and crafts organization resident in the United States or an non-member Indian artisan certified by an Indian tribe, all as defined in 25 U.S.C. §305 et. seq. and the regulations thereunder.

21.    Defendant's advertisement, display, offering for sale and sale of Indian style goods in a manner that falsely suggests they are Indian products, Indian produced or the product of a particular Indian or Indian tribe or Indian arts and crafts organization resident within the United States is illegal and should be enjoined in that no adequate remedy at law exists and Plaintiff will be irrevocably injured and damages will be difficult to measure.

22.    Native American Arts has been injured and damaged as a result of Defendant's actions alleged herein. Native American Arts is a competitor of Defendant and has suffered competitive injuries as a result of Defendant's actions alleged herein, as well as other damages including (1) Native American Arts lost sales as a direct and indirect result of the Defendant's

offer, display and sale of similar Indian-style products to those offered, displayed and sold by Native American Arts through similar mediums and markets, (2) Defendant's imitation products drove down prices of authentic Indian products, forcing Plaintiff to offer its authentic products at lower prices, (3) that Plaintiff has suffered a loss of goodwill and reputation because of Defendant's counterfeit product and (4) that Defendant's had a gross profit on the products alleged herein.   Native American Arts advertises, markets and sells authentic Indian-made products similar to those products advertised, offered, displayed and sold by Defendant falsely suggested to be Indian-made products, including but not limited to, arts, crafts, jewelry and artworks in a traditional Indian style or medium.   Native American Arts advertises, offers, markets and sells authentic Indian-made products through various mediums including, but not limited to, newspaper advertisements, radio, signs, catalogs, brochures, internet, mailed solicitations, miscellaneous and in-store retail displays.

23.    The injuries suffered by Native American Arts, Inc. include, but are not limited to, advertising injury arising out of Defendant's misappropriation of Native American Art, Inc.'s advertising ideas and style of doing business.

24.    The injuries suffered by Native American Arts, Inc. include, but are not limited to, advertising injury arising out of Defendant's infringement of title by falsely suggesting and misrepresenting that its products were Indian made when they were not.

25.    The injuries suffered by Native American Arts, Inc. include but, are not limited to, advertising injury arising out of Defendant's use of another's advertising idea.

26.    The injuries suffered by Native American Arts, Inc. include, but are not limited to, advertising injury arising out of Defendant's infringing upon Native American Arts' slogan.

27.     Liability for compensatory damages under the IACA is strict liability and not dependent upon intentional conduct as ruled in the case of <u>Ho-Chunk et. al., v. Village Originals, Inc.</u> 25 F. Supp.2d 876 (N.D.Il. 1998) and <u>Ho-Chunk v. Natures Gifts, Inc.</u>, 1999 U.S. Dist. Lexis 3687 (N.D. Il. 1999).

28.     Title 25 U.S.C. §305e (a) provides for damages of the greater of treble damages or $1,000 for each day on which the offer or display for sale of a good falsely suggested to be Indian produced, an Indian product, or the product of an Indian, an Indian tribe, or an Indian arts and crafts organization continues.

29.     Native American Arts is an Indian arts and crafts organization entitled to the damages alleged herein.

30.     The exact amount of damages is presently unknown, but is believed to exceed nine million dollars ($9,000,000.00).

31.     Title 25 U.S.C. §305e (a) also provides for injunctive and other equitable relief.

32.     Substantial amounts for attorney's fees and costs of suit have been or are being incurred for which reimbursement and payment is hereby sought.

WHEREFORE, Plaintiff Native American Arts, Inc. prays for the entry of judgment against Defendant, and:

(a) for an award of compensatory damages in an amount to be determined but believed to exceed nine million dollars ($9,000,000.00);

(b)  reasonable attorneys fees and costs of suit;

(c) a temporary restraining order, preliminary injunction and permanent injunction; and

(d) such other and further relief as this Court deems just and deserving.

  s/ Michael P. Mullen          
One of the attorneys for Plaintiff
Native American Arts, Inc.

Michael P. Mullen
Scott M. Kolosso
MULLEN & FOSTER
203 N. Wabash Avenue, Suite 2300
Chicago, IL  60601
312-750-1600

## **JURY DEMAND**

Plaintiff Native American Arts, Inc. hereby demands trial by Jury.


s/ Michael P. Mullen_____
One of the attorneys for Plaintiff
Native American Arts, Inc.





# Turtle Island
## The Native American Collection

### BEAR PAW

The Bear Paw is the mark of the Bear. It shows that the place where it appears is his territory. The bear hibernates in winter teaching people the value of retreat into introspection. The bear's strength is hard for people to imagine. It can kill an animal half its weight with one blow. The Bear is close to humans, eating the same foods and sometimes standing on two legs. The bear is our brother, and his paw mark means that his presence is available to us, to teach introspection and warriorship.

© Nirvana
*printed on recycled paper*



EXHIBIT

A





# Turtle Island
## *The Native American Collection*

### THE ZUNI BEAR

The Bear with an arrow from its head to its heart comes from the Zuni culture. It shows the warrior's heart that bears have, and lets us see that the heart of a bear is an important spiritual symbol. The bear is a hunter who has no natural enemies. He therefore has no fear of defeat. Bears are also fiercely protective of their young.

© Nirvana
*printed on recycled paper*

# Turtle Island
## *The Native American Collection*

### THE ZUNI BEAR

The Bear with an arrow from its head to its heart comes from the Zuni culture. It shows the warrior's heart that bears have, and lets us see that the heart of a bear is an important spiritual symbol. The bear is a hunter who has no natural enemies. He therefore has no fear of defeat. Bears are also fiercely protective of their young.

© Nirvana
*printed on recycled paper*



EXHIBIT
B





# Turtle Island
*The Native American Collection*

### THE COYOTE

The Coyote is a spirit helper for those who hunt its power. Hunting its power means learning it's movements, understanding its habits and contemplating its cries. Coyotes are solitary animals, coming together only to mate and to hunt those animals too large for them to take alone. In spite of their fierce ways, coyotes are also deeply maternal towards their young, and thus are a symbol of protection.

© Nirvana
*printed on recycled paper*

# Turtle Island
*The Native American Collection*

### THE COYOTE

The Coyote is a spirit helper for those who hunt its power. Hunting its power means learning it's movements, understanding its habits and contemplating its cries. Coyotes are solitary animals, coming together only to mate and to hunt those animals too large for them to take alone. In spite of their fierce ways, coyotes are also deeply maternal towards their young, and thus are a symbol of protection.

© Nirvana
*printed on recycled paper*

EXHIBIT

C





# Turtle Island
*The Native American Collection*

### THE LIZARD

The Lizard is a dreaming animal. He spends much of his time sitting motionless, waiting. When People do the same thing, they have visions, dreams and altered states of consciousness. The sign of the lizard is an invitation to enter the realms of one's inner world. The Lizard also has the unique ability to drop off a part of it's tail, letting go a part of it's own body to distract predators. In this way, it teaches us to be prepared to drop the attachments that make it hard to live as we choose.

© Nirvana
*printed on recycled paper*



# Turtle Island
*The Native American Collection*

### THE LIZARD

The Lizard is a dreaming animal. He spends much of his time sitting motionless, waiting. When People do the same thing, they have visions, dreams and altered states of consciousness. The sign of the lizard is an invitation to enter the realms of one's inner world. The Lizard also has the unique ability to drop off a part of it's tail, letting go a part of it's own body to distract predators. In this way, it teaches us to be prepared to drop the attachments that make it hard to live as we choose.

© Nirvana
*printed on recycled paper*

EXHIBIT
D
Blumberg No. 5208



# Turtle Island
*The Native American Collection*

### THE LIZARD

The Lizard is a dreaming animal. He spends much of his time sitting motionless, waiting. When People do the same thing, they have visions, dreams and altered states of consciousness. The sign of the lizard is an invitation to enter the realms of one's inner world. The Lizard also has the unique ability to drop off a part of it's tail, letting go a part of it's own body to distract predators. In this way, it teaches us to be prepared to drop the attachments that make it hard to live as we choose.

© Nirvana
*printed on recycled paper*

# Turtle Island
*The Native American Collection*

### THE LIZARD

The Lizard is a dreaming animal. He spends much of his time sitting motionless, waiting. When People do the same thing, they have visions, dreams and altered states of consciousness. The sign of the lizard is an invitation to enter the realms of one's inner world. The Lizard also has the unique ability to drop off a part of it's tail, letting go a part of it's own body to distract predators. In this way, it teaches us to be prepared to drop the attachments that make it hard to live as we choose.

© Nirvana
*printed on recycled paper*




EXHIBIT
E



# Turtle Island
*The Native American Collection*

### KOKOPE
(BLUE

Kokopelli w   the    n of the peoples
of the south    US Playing his flute,
he wandered w    ations follow-
ing him. He taught   people how to
grow corn, giving them life. He taught
them music and sacred songs, making
one bundle of all his people. He taught
them the way of peace, and until the
coming of the white people, the Hopi
lived in peace. Kokopelli lived in times
out of mind, yet his legacy continues
as Southwestern Native Americans
still carry on the ways he taught them.

© Nirvana
*printed on recycled paper*



# Turtle Island
*The Native American Collection*

### KOKOPELLI
(BLUE FLUTE)

Kokopelli was the scion of the peoples
of the southwest US. Playing his flute,
he wandered with the nations follow-
ing him. He taught the people how to
grow corn, giving them life. He taught
them music and sacred songs, making
one bundle of all his people. He taught
them the way of peace, and until the
coming of the white people, the Hopi
lived in peace. Kokopelli lived in times
out of mind, yet his legacy continues
as Southwestern Native Americans
still carry on the ways he taught them.

© Nirvana
*printed on recycled paper*



EXHIBIT
**F**





# Turtle Island
*The Native American Collection*

### KOKOPELLI
### (BLUE FLUTE)

Kokopelli was the scion of the peoples
of the southwest US. Playing his flute,
he wandered with the nations follow-
ing him. He taught the people how to
grow corn, giving them life. He taught
them music and sacred songs, making
one bundle of all his people. He taught
them the way of peace, and until the
coming of the white people, the Hopi
lived in peace. Kokopelli lived in times
out of mind, yet his legacy continues
as Southwestern Native Americans
still carry on the ways he taught them.

© Nirvana
*printed on recycled paper*

# Turtle Island
*The Native American Collection*

### KOKOPELLI
### (BLUE FLUTE)

Kokopelli was the scion of the peoples
of the southwest US. Playing his flute,
he wandered with the nations follow-
ing him. He taught the people how to
grow corn, giving them life. He taught
them music and sacred songs, making
one bundle of all his people. He taught
them the way of peace, and until the
coming of the white people, the Hopi
lived in peace. Kokopelli lived in times
out of mind, yet his legacy continues
as Southwestern Native Americans
still carry on the ways he taught them.

© Nirvana
*printed on recycled paper*

EXHIBIT

G







# Turtle Island
*The Native American Collection*

### KILLER WHALE

The Killer Whale is a strong spirit ally. He has no natural enemies. Being a mammal, the Killer Whale nurses its young, and shows them a nurturing rare among sea animals. The Killer Whale symbolizes both nurturing and warriorship. Even today, many Native American families use the Killer Whale for their crest in the Pacific Northwest.

© Nirvana
*printed on recycled paper*

# Turtle Island
*The Native American Collection*

### KILLER WHALE

The Killer Whale is a strong spirit ally. He has no natural enemies. Being a mammal, the Killer Whale nurses its young, and shows them a nurturing rare among sea animals. The Killer Whale symbolizes both nurturing and warriorship. Even today, many Native American families use the Killer Whale for their crest in the Pacific Northwest.

© Nirvana
*printed on recycled paper*

EXHIBIT

H



# Turtle Island
*The Native American Collection*

## EAGLE FEATHER

The Eagle Feather is a sacred object to the American Indian peoples. No bird flew higher. No bird sees farther. An eagle feather was given to a warrior who performed an act of bravery. Not just any brave action earned brother Eagle's feather. It had to be performed to protect or help one of his fellow warriors, or his tribe. Even today, among Native Americans, the eagle feather is considered so full of medicine, or spirit power, that if one touches the ground or floor it must be purified by a special ceremony by a medicine man or woman. The eagle is the awareness of the people, and its feather holds the energy of the highest wisdom, the wisdom which puts the protection of one's people higher than one's own life.

© Nirvana
*printed on recycled paper*



# Turtle Island
*The Native American Collection*

## EAGLE FEATHER

The Eagle Feather is a sacred object to the American Indian peoples. No bird flew higher. No bird sees farther. An eagle feather was given to a warrior who performed an act of bravery. Not just any brave action earned brother Eagle's feather. It had to be performed to protect or help one of his fellow warriors, or his tribe. Even today, among Native Americans, the eagle feather is considered so full of medicine, or spirit power, that if one touches the ground or floor it must be purified by a special ceremony by a medicine man or woman. The eagle is the awareness of the people, and its feather holds the energy of the highest wisdom, the wisdom which puts the protection of one's people higher than one's own life.

© Nirvana
*printed on recycled paper*

EXHIBIT
**I**







EXHIBIT
J




EXHIBIT
K